Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JAMES B. ZAGEL | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 2784 | DATE | 9-21-00 |
| CASE TITLE | Levi Nash, #B-01861 vs. George H. Ryan, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, the defendant American Correctional Association's motion to dismiss or, in the alternative, for summary judgment [#17] is granted. At the close of the case, the clerk is directed to enter judgment in favor of the A.C.A. and against the plaintiff pursuant to Fed. R. Civ. P. 56. The American Correctional Association is terminated as a defendant. The I.D.O.C. defendants' motion to dismiss (docket #16) is denied. The I.D.O.C. defendants must answer or otherwise plead within fourteen days of the date of this order. The defendant Joseph Smith must respond to the complaint or face default. The plaintiff's request for a preliminary injunction is denied.

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 2 2000 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 22 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 00 SEP 21 PM 1:05 | date mailed notice |
| mjm | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEVI NASH, #B-01861 ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 00 C 2784 |
| v. ) | |
| ) | U.S. District Judge |
| GEORGE DeTELLA, et al., ) | James B. Zagel |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials, have violated the plaintiff's constitutional rights by acting with deliberate indifference to his health and safety. More specifically, the plaintiff alleges that the water at the Stateville Correctional Center is contaminated with radium, bacteria, and other pollutants, that the tainted water has seriously affected the health of the plaintiff "and other similarly situated inmates,"[1] and that the defendants have failed to make any efforts to rectify the problem. This matter is before the court for consideration of pending motions. For the reasons stated in this order, summary judgment will be granted in favor of the American Correctional Association, but the I.D.O.C. defendants' motion to dismiss will be denied.

---

[1] The plaintiff labels this lawsuit as a class action but has not yet filed a motion for class certification. *See discussion, infra.*

## FACTS

The plaintiff is a state prisoner, confined at the Stateville Correctional Center. The defendant James H. Page is Stateville's warden. The defendants Donald Gaetz, Vance Vinson, and Jerome Springborn are assistant wardens at Stateville. The defendant Robert Gunville is the facility's chief engineer. The defendant Barbara Miller is the administrator of the prison's health care unit. The defendants Donald Snyder and George DeTella are, respectively, the director and deputy director of the Illinois Department of Corrections.[2]

The plaintiff's complaint, deemed true for purposes of the motion to dismiss, alleges as follows: The defendants have "deliberately conspired" to place past and present Stateville inmates' health at risk by refusing to provide them with water free of contaminants. The levels of radium and bacteria have been unacceptable from at least November 1998 to the present. The plaintiff and other inmates have suffered from rashes, hypertension, eczema, psoriasis, breathing disorders, diarrhea, constipation, and various forms of cancer, all on account of the water. The water also places the inmate population at risk for future health problems. Although the defendants are aware of the problem, they have never posted any notices alerting the inmates that the water is unsafe. The defendants have also failed to provide medical screening to ascertain the degree of ill effects caused by drinking and bathing in the water. Correctional employees bring bottled water to work; inmates must purchase bottled water. The plaintiff and other inmates

---

[2] By Minute Order of May 24, 2000, the court on its own motion dismissed the complaint as to Governor George Ryan for lack of personal involvement. The defendant Joseph Smith, Stateville's medical director, signed a waiver of service on May 26, 2000, but has not joined the motion to dismiss, answered, or otherwise responded to the complaint.

2

cannot afford to buy bottled water. The medical staff has not spoken out about the increase in serious internal and external medical problems suffered by the inmate population.

The defendants bribed the American Correctional Association to "keep their mouths shut" about the unsafe drinking water. Each year the A.C.A. has accredited Stateville despite the high levels of water contaminants.

The plaintiff's grievances have been denied at all levels of review.

## DISCUSSION

The defendant American Correctional Association's motion to dismiss or, in the alternative, for summary judgment, will be granted. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In its apparently uncontested motion, the American Correctional Association (hereinafter, "A.C.A.") has demonstrated that it is a private, not-for-profit corporation. (Affidavit of James Gondles, Executive Director of the A.C.A., #3.) The A.C.A. maintains a voluntary certification program for correctional facilities to apply for A.C.A. accreditation. (*Id.*, #5.) The A.C.A. has no authority either to require a correctional facility to seek accreditation, or to adopt or change any prison procedures. (*Id.*, #6.) A.C.A.'s sole authority is to deny accreditation to any facility found to be not in compliance with A.C.A.'s standards. (*Id.*) No governmental organization requires A.C.A. accreditation of its correctional facilities. (*Id.*, #7.) The A.C.A. has accredited the Stateville Correctional Center at least five times, most recently in August 1997.

The court finds that the American Correctional Association is entitled to judgment as a matter of law. In order to be liable under 42 U.S.C. § 1983, a defendant must have both (a) acted under color of state law and (b) violated a constitutional right. *Papapetropoulous v. Milwaukee Transport Services, Inc.*, 795 F.2d 591, 595 (7th Cir. 1986); *Reichenberger v. Pritchard*, 660 F.2d 280, 284 (7th Cir. 1981). The court questions how the plaintiff is aware, or could prove, that the A.C.A. has accepted bribes to accredit the Stateville Correctional Center. Regardless, the matter implicates no constitutional right. The A.C.A., a private organization, cannot be held liable for the prison's having allegedly exposed the plaintiff to contaminated water, nor for accrediting the prison despite the existence of tainted water. The plaintiff has no viable cause of action against the A.C.A. Accordingly, summary judgment will be granted in favor of the American Correctional Association.

However, the motion to dismiss filed by those defendants employed by the Department of Corrections must be denied. It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972). *See also Tarkowski v. Robert Bartlett Realty Company*, 644 F.2d 1204 (7th Cir. 1980). Such a complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Gregory v. Nunn*, 895 F.2d 413, 414 (7th Cir. 1990). When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990).

The Eighth Amendment prohibits deliberate indifference to inmates' health and safety. Failure to take reasonable measures in the face of a substantial risk of serious harm violates the Constitution. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). In order to establish Eighth Amendment liability, a plaintiff must meet two requirements: first, he must show that the challenged conditions of confinement are objectively so serious as to amount to the denial of a basic human need; second, he must show that the defendant official has acted with deliberate indifference. *Id.* at 834. "The infliction must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). "Liability under

the Eighth Amendment requires punishment, and punishment requires more than negligence, whether ordinary or gross. It requires, at a minimum, that the prison officials have realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987), *relying on Whitley v. Albers*, 475 U.S. 312 (1986).

The plaintiff claims the water at Stateville is unfit to drink and that the defendants have acted with deliberate indifference to the known risk. In *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999), an inmate at the Tamms Correctional Center filed a civil rights action charging that there was lead in the prison's drinking water. The district court dismissed the complaint pursuant to 42 U.S.C. § 1997e(e) based on a lack of physical injury. The Court of Appeals for this circuit reversed the dismissal of that case, ruling that the inmate did not have to show present physical injury to proceed on his lawsuit. Similarly, in *Helling v. McKinney*, 509 U.S. 25, 33 (1993), a case concerning an inmate's exposure to environmental tobacco smoke, the Supreme Court observed:

> This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. **We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery.** Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.

509 U.S. at 33 (emphasis added).[3]

---

[3] *Helling* is still good law despite the enactment of the Prison Litigation Reform Act. In an unpublished 1998 decision, the Seventh Circuit Court of Appeals noted, citing *Helling*, that,
(continued...)

Under these standards, the court concludes that the complaint sets forth an arguable claim for relief under 42 U.S.C. § 1983. The plaintiff charges, and the court must accept as true at this stage of the proceedings, that the water at Stateville is unsafe to drink. If the plaintiff can prove that the defendants have subjected him to an unreasonable risk of harm, then he may be able to recover damages. It is not the case that the plaintiff could prove "no set of facts" entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The doctrine of collateral estoppel does not bar this lawsuit, as the defendants argue. Judges of this court have ruled in the Department of Corrections' favor in at least two previous lawsuits concerning alleged contamination of the water at Stateville. *See, e.g., Carroll v. DeTella*, 99 cv 2443, 2000 WL 20711 (N.D. Ill. Jan. 10, 2000) (Leinenweber, J.); *Bolden v. Zernicke*, 94 cv 6203, 1999 WL 731780 (N.D. Ill. Aug. 30, 1999) (Williams, J.). However, the court cannot apply collateral estoppel against the plaintiff in the case at bar, as he was not a party to any prior lawsuit regarding the water at Stateville. Neither *Carroll* nor *Bolden* was a class action. One of the prerequisites of collateral estoppel is that the party against whom the doctrine is asserted was a party [or privy] to the earlier proceeding. *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995), *citing Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986). Although the decisions in *Carroll* and *Bolden* cast considerable doubt on the plaintiff's likelihood of ultimate

---

[3](...continued)
"Eighth Amendment protection also extends to conditions that threaten to cause health problems in the future, as well as current serious health problems." *Williams v. Scott*, 142 F.3d 441, TABLE, 1998 WL 152969, *2 (7th Cir. 1998). Unlike the the plaintiff in *Williams*, the plaintiff in the case at bar claims potential physical injury and not just emotional distress.

success in this lawsuit, the earlier cases were fully developed and resolved at the summary judgment phase. The plaintiff may proceed on his claim that the water at Stateville is dangerously unsafe.

At this early stage, the court rejects the defendants' asserted defense of qualified immunity. The defendants contend that the law is "not clear" as to "how pure drinking water must be." Under the doctrine of qualified immunity, state officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether the plaintiff's claim states a violation of his constitutional rights. The court then determines whether those rights were clearly established at the time the alleged violation occurred. *See Wilson*, 526 U.S. at 609; *Khuans v. School Dist. 110*, 123 F.3d 1010, 1013 (7th Cir. 1997). If the rights were clearly established, the official may be liable for monetary damages and the suit proceeds to the next stage. If the rights were not clearly established, then the official is immune from suit and the claim is dismissed. *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997) ("[A] legal defense may well involve 'the essence of the wrong,' while an immunity frees one who enjoys it from a lawsuit whether or not he acted wrongly.").

A clearly established right is one where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*,

8

483 U.S. at 640. "Because there is an almost infinite variety of factual scenarios that may be brought into the courtroom, a the plaintiff need not point to cases that are identical to the presently alleged constitutional violation." *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). However, "the contours of the right must have been established so that the unlawfulness of the defendant's conduct would have been apparent in light of existing law." *Id., citing Cleveland- Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir. 1989), *cert. denied*, 498 U.S. 949 (1990)..

The defendants maintain that they are entitled to qualified immunity because water standards are currently "in flux," as noted in the *Carroll* decision cited *supra*. At the time Judge Leinenweber rendered his decision, the E.P.A. had not made a final determination as to what level of radium was safe and was not requiring agencies to take action if radium amounts fell within a certain range. Judge Leinenweber therefore found that neither an objective nor subjective violation of the Eighth Amendment existed because the defendants were not acting with deliberate indifference to a known danger. But the question in this case is not how specifically pure the water must be, but rather whether the defendants have "knowingly and unreasonably" exposed the plaintiff to "an intolerable risk of harm," *see Farmer*, 511 U.S. at 845, by failing to take any action to address the problem of unsafe drinking water. While the E.P.A.'s standards may influence that ultimate determination,[4] the plaintiff has a long-established right to food [and by extension, water]

---

[4] Of course, non-compliance with E.P.A. standards would not itself necessarily form a basis for a cause of action under 42 U.S.C. § 1983. Violations of state or federal law are not the same as constitutional violations. Rather, the court relies on E.P.A. standards to determine whether the plaintiff faces a substantial risk of serious harm; furthermore, the defendants' compliance or non-compliance with the state and federal Environmental Protection Agencies may reflect good faith
(continued...)

that "does not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986) (citations omitted). Furthermore, the Court of Appeals recently announced that qualified immunity is an issue better addressed at summary judgment and is "almost always a bad ground of dismissal." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000).

For the foregoing reasons, the motion to dismiss is denied with respect to the plaintiff's claim that the water at the Stateville Correctional Center is unsafe to drink.

Class Action

The defendants assert that this case is not a suitable candidate for class certification, principally because an incarcerated, *pro se* plaintiff cannot adequately represent the interests of his fellow class members. In response, the plaintiff points out that the court could appoint an attorney to represent the class. However, at this time, the plaintiff has not moved for class certification. A motion for class certification must establish that the case satisfy the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Only when the court is presented with an actual motion for class certification will it decide whether such action is appropriate under the circumstances of this case.

It should be noted that when a plaintiff seeks class certification, the court, as a general principle, should not consider the merits of the case. *Daniels v. Federal Reserve Bank of Chicago*, 194 F.R.D. 609, 613 (N.D. Ill. 2000), *relying on Retired Chicago Police Ass'n v. City of Chicago*,

---

⁴(...continued)
or deliberate indifference.

7 F.3d 584, 598 (7th Cir.1993). But the plaintiff is reminded that in signing any court document and presenting it to the clerk for filing, he is vouching for its factual truth. *See* Fed. R. Civ. P. 11(b). The plaintiff is cautioned to carefully, completely, and honestly draft court pleadings and motions. Failure to adhere punctiliously to the truth may result in the imposition of sanctions, including dismissal. *Accord, Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999) ("fraud" on the court must "lead to immediate termination of the suit").

The plaintiff's own exhibits, which admittedly include arguably self-serving statements by correctional officials, indicate that Stateville's water does not expose the inmates to harm. According to materials relating to the plaintiff's most recent grievance, "Stateville's water supply is analyzed by an independent laboratory as required. The most recent analysis was conducted December 1999, which indicates that the water at this facility is safe." (Plaintiff's Exhibit A1.) Furthermore, "the administration of the facility is currently exploring treatment options in order to reduce the heightened combined radium levels in the water supply. . . ." (Plaintiff's Exhibit A2.) Even assuming that the water contains excessive amounts of radium or other contaminants, the scourge of health conditions the plaintiff ascribes to the water (including rashes, hypertension, eczema, psoriasis, breathing disorders, diarrhea, constipation, and various forms of cancer) do not appear to be scientifically plausible. According to Warden's Bulletin (00-05) (Plaintiff's Exhibit 4), radium "at relatively high doses" can cause cancer of the sinus and mastoid air cell (also known as head cancer). However, "[t]here is no evidence that radium in the water leads to sterility, fatigue, bone aches, nausea or any other ill effects." *Id.* Certain allegations in the complaint, such as that Stateville officials bribe accreditation officials, strike the court as wildly

11

speculative at best, and outright inventions at worst. At some point, the plaintiff will have to submit proof of his various accusations.

Finally, in his brief opposing dismissal, the plaintiff seeks a preliminary injunction ordering the Department of Corrections to conduct a medical screening of all Stateville inmates, to provide inmates with bottled or contaminant-free water, and to refrain from retaliating against or harassing the plaintiff. The prerequisites to the granting of a preliminary injunction are well established. To support the issuance of a preliminary injunction, a plaintiff must demonstrate: (1) a reasonable likelihood of success on the merits; (2) the inadequacy of a remedy at law; (3) the existence of irreparable harm if the injunction is not issued; (4) the threat of harm to the plaintiff outweighs the threatened harm to the defendant if the injunction were issued; and (5) the granting of a preliminary injunction will not disserve the public interest. *Somerset House, Inc. v. Turnock*, 900 F.2d 1012, 1014-15 (7th Cir. 1990). The plaintiff must satisfy each of these elements to prevail. *Id.* at 1015. The purpose of a preliminary injunction is merely to minimize the hardship to the parties and to preserve the status quo pending a more considered decision of the merits when possible. *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 264 (7th Cir. 1981), *cert. denied*, 455 U.S. 921 (1982). Here, the plaintiff has not met his burden.

The plaintiff has not shown that he is entitled to emergency relief. The literature submitted by the plaintiff himself indicates that excessive levels of radium, over extended periods of time, may cause ill effects. But here, the record before the court does not suggest that the plaintiff faces any imminent danger from the water. The mere presence of radium in the water can be

distinguished from the high levels required for damage. Moreover, there is no indication that prison officials have retaliated or threatened to retaliate against the plaintiff for bringing this suit. If, in fact, prison officials take retaliatory action against the plaintiff, he may wish to file another civil rights action to redress the violation of his constitutional rights. However, the court will not enter an injunction based on the plaintiff's unsubstantiated fear of reprisal.

IT IS THEREFORE ORDERED that the defendant American Correctional Association's motion to dismiss or, in the alternative, for summary judgment (docket #17) is granted. At the close of the case, the clerk is directed to enter judgment in favor of the A.C.A. and against the plaintiff pursuant to Fed. R. Civ. P. 56. The American Correctional Association is terminated as a defendant.

IT IS FURTHER ORDERED that the I.D.O.C. defendants' motion to dismiss (docket #16) is denied.

IT IS FURTHER ORDERED that the I.D.O.C. defendants answer or otherwise plead within fourteen days of the date of this order. The defendant Joseph Smith must respond to the complaint or face default.

IT IS FURTHER ORDERED that the plaintiff's request for a preliminary injunction is denied.

ENTER:

Dated: 9-21-2000

JAMES B. ZAGEL
United States District Judge

13